HONORABLE JAMES L. ROBART
NOTING DATE: January 15, 2023

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEPHEN J. TUTTLE, et al,

               Plaintiffs,

   v.

AUDIOPHILE MUSIC DIRECT INC. d/b/a
MUSIC DIRECT and MOBILE FIDELITY,
SOUND LAB, INC. d/b/a MOBILE FIDELITY
and/or MOFI,

               Defendants.

No.  22-cv-01081-JLR

**UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
AND NOTICE PROGRAM**

Plaintiffs Stephen Tuttle and Dustin Collman, on behalf of themselves and the putative

class they seek to represent respectfully submit this Unopposed Motion for Certification of

Settlement Class and for Preliminary Approval of Class Action Settlement.

## I. INTRODUCTION.

Defendants Audiophile Music Direct, Inc. ("Music Direct") and Mobile Fidelity Sound

Lab, Inc. ("MoFi") (collectively, "Defendants") are business entities which  market and sell

high-end vinyl record audio recordings.  The records are mastered and manufactured by MoFi

and sold to the retail and wholesale market by both MoFi and Music Direct.  Music Direct is the

primary retail and wholesale seller of MoFi's records.  This is a putative class action lawsuit

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

brought by Defendants' customers and purchasers of certain of MoFi's Original Master Recording ("OMR") and Ultradisc One-Step ("One-Step") series vinyl records which were sourced from original analog master recordings and contained a direct stream digital transfer step in the mastering chain (the "Applicable Records").

In the lawsuit, the Plaintiffs allege that Defendants represented that MoFi's collectable and limited-edition OMR and One-Step series vinyl records were produced with "analog-only" methods. Under these methods, a consumer record is produced using an analog master recording, without any intervening digital transfer, translation, or storage. Many vinyl records created using analog-only methods are highly prized by audiophiles, and often carry a higher price point in the primary and secondary markets. Plaintiffs allege that in reality, Defendants relied on production methods which involved digital storage and translation, the absence of which was a major selling point of their "analog-only" products. Plaintiffs allege that by misrepresenting the source and provenance of the Applicable Records, Defendants acted unfairly and deceptively, and breached their contractual obligations to original purchasers. Defendants deny all such allegations.

As result of these claims, the Parties have reached a proposed settlement which would allow all original purchasers to either: return their Applicable Records to Defendants in exchange for a full refund, plus any shipping and taxes, or alternatively, keep their Applicable Records and receive either a refund equal to five percent (5%) of the Applicable Records' purchase price, or a coupon for ten percent (10%) of the Applicable Records' purchase price towards other of Defendant Music Direct's or MoFi's products. Under the proposed settlement, Class Members are able to make this selection in respect to each Applicable Record purchased. Thus, for Applicable Records whose value on the secondary market is higher than the purchase price,

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Class Members can keep those Applicable Records and still receive other means of fair and reasonable consideration.

Because the Settlement Class is comprised of both individuals purchasing directly from Defendants and those who purchased from other retailers selling Applicable Records, the Parties propose a substantival and intensive notice program which has been designed with the assistance of notice expert, Kroll Settlement Administration, LLC ("KSA" and/or the "Notice Expert") and which will be administered by an agreed-upon class action administrator (the "Settlement Administrator"). Under that program, the Settlement Administrator will issue notice to all Class Members who purchased directly from Defendants by First Class U.S. Mail. To reach those who purchased Applicable Records from other retailers, the Settlement Administrator will advertise the settlement in industry and hobbyist print and online publications, a Facebook ad campaign, as well as on Defendants' own respective Music Direct and MoFi retail websites. This multi-front approach will ensure strong notice saturation among the proposed Settlement Class.

Finally, the proposed Settlement is the result of extensive and arm's-length negotiations among the Parties and their counsel and is a fair compromise in light of potential risks and uncertainties of continued litigation.

## II. FACTUAL BACKGROUND.

### A. Defendants' Marketing of the Applicable Records.

Defendant MoFi is a manufacturer of high-end audio recordings, including, without limitation, the Applicable Records, which it sells online to retail consumers and wholesale to other retailers. Defendant Music Direct is a primary retail and wholesale seller of MoFi recordings, including, without limitation, the Applicable Records. Between March 19, 2007, and approximately July 27, 2022, the Defendants marketed and sold vinyl records labeled

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

"Original Master Recording" or "Ultra-Disc One-Step," including, without limitation, the Applicable Records.

In describing the Applicable Records, Defendants frequently represented that they were "Mastered from the Original Master Recordings…"  Plaintiffs allege that among the audiophile community, this representation and many others were understood to mean that Defendant MoFi was using an all-analog "mastering chain" to produce its vinyl records.[1]  Plaintiffs allege an all-analog mastering chain inherently limits the number of producible copies because each newly stamped record wears and degrades the source master lacquer.  Plaintiffs further allege, for this reason, many of MoFi's products were sold in limited runs, which increased their collectability to audiophiles and earned a higher price point because of their respective scarcity on the primary and secondary markets.  Defendants deny all such allegations.

**B. Potential Class Members.**

Prior to reaching this settlement, Defendants produced sales data to Plaintiffs' Counsel for approximately one-hundred and twenty-three (123) OMR and One-Step Applicable Records. *See* Declaration of Jim Davis, President of Music Direct.[2]  This data showed that Defendants had sold over six-hundred thousand (630,000) OMR and one-step Applicable Records during the relevant period, of which approximately one-quarter were to retail customers. *See* Declaration of Duncan C. Turner, ¶2.  The remaining three-quarters were sold wholesale by Defendants to distributors who sold wholesale to retailers, *e.g.* Best Buy, Walmart, and independent record stores, who then sold the Applicable Records at retail to consumers. *Id.*  Because the proposed

---

[1] A "mastering chain" is the method used to produce vinyl records from an original audio master studio recording or tape.
[2] Although Defendants originally produced data for one-hundred and twenty-four (124) records, it later produced information showing that one-hundred and twenty-three (123) were relevant to Plaintiffs' allegations.

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Settlement Class is comprised of both direct and indirect retail purchasers of Applicable Records, it is difficult to estimate the potential class size.  Nonetheless, Defendants estimate that the proposed Class is comprised of at least 20,000 direct purchasers and 20,000 indirect purchasers.

**C. Procedural Posture.**

This action was filed on August 2, 2022. Dkt. #1. On September 28, 2022, the Defendants appeared through counsel. Dkt. #5. On December 20, 2022, the Plaintiffs amended their complaint to describe the Defendant parties more accurately. Dkt. #14. To date, no formal discovery has occurred and Defendants have not answered.

Plaintiffs are aware of at least four other putative class actions against Defendants arising from substantially similar claims over its "all-analog" process:

- *Stiles v. Mobile Fidelity Sound Lab,* - #1:22-cv-04405 (N.D. Illinois)

- *Bitterman v. Mobile Fidelity Sound Lab, et al.,* - #1:22-cv-04714 (N.D. Illinois)

- *Allen v. Audiophile Music Direct, et al.,* - #2:22:cv-08146 (C.D. California)

- *Molinari v. Audiophile Music Direct, et al.,* - #4:22-cv-05444 (N.D. California)

To Plaintiffs' knowledge, none of these cases have been consolidated or certified for class treatment, and no class counsel has been appointed.

**D. Terms of the Proposed Settlement.**

The terms of the Parties' proposed settlement are within the Settlement Agreement. See Turner Dec., Ex. 1. For purposes of preliminary approval, the following summarizes the Settlement Agreement's terms:

**1. The Settlement Class.**

The proposed Settlement Class is comprised of:

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

1
2
3
4
5
6

All persons in the United States who, from March 19, 2007, to July 27, 2022, purchased, either directly from a Defendant or directly from retail merchants, new and unused vinyl recordings that were sourced from original analog master tapes and which utilized a direct stream digital transfer step in the mastering chain, and which were marketed by Defendants using the series labeling descriptors "Original Master Recording" and/or "Ultradisc One-Step," provided that said purchasers still own said recordings. Excluded from the Class are persons who obtained subject recordings from other sources.

7
8
9
10
11
12

To date, Defendants have identified approximately one-hundred and twenty-three (123) Applicable Records marketed in this fashion. Although investigation is ongoing and additional albums may be identified prior to notice publication, the Settlement is structured as to only effect the rights of purchasers of specific albums, not all Defendants customers generally. *See* Settlement Agreement, Exhibit A.

13
14

As previously described, based on available sales data for these albums, the Class is estimated to comprise over forty thousand (40,000) individual purchasers. Davis Declaration, ¶5.

15

**2. Financial Consideration and Release.**

16
17
18
19
20
21
22
23
24
25
26

Under the terms of the Settlement Agreement, the Defendants agree to provide Class Members with the following three (3) different approaches to relief: (i) For individuals who want to return their Applicable Records, Class Members will receive a full refund including associated taxes and shipping; For individuals who want to keep their Applicable Records, they may elect to either receive (i) a refund payment of five percent (5%) of the record's original purchase price and associated taxes and shipping in the form of a check or electronic payment, or (iii) a coupon in the amount of ten percent (10%) of the record's original purchase price for retail purchases at either of Defendant MoFi's or Music Direct's retail websites. The total gross value of available relief is over $25 million dollars.

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
AND NOTICE PROGRAM - 6
Case No. 22-cv-01081-JLR

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

1

2

In consideration, the Settlement Class members shall release the Defendants and other released parties from:

> any and all Claims which arise out of or are in any way related to Defendants' marketing, promotion and sale of the Applicable Records during the Applicable Period (including, without limitation, Unknown Claims as defined herein), demands, rights, liabilities, and causes of action of every nature and description whatsoever including, without limitation, statutory, constitutional, contractual, or common law claims, whether known or unknown, whether or not concealed or hidden, whether contingent or vested, against Defendants, the Defendants' Releasees, or any of them, that accrued, had accrued, or could have accrued at any time on or prior to the Preliminary Approval Date for any type of relief whatsoever including, without limitation, compensatory damages, treble damages, unpaid costs, penalties, statutory damages, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, rescission, or equitable relief, based on any and all claims which are or could have been raised in the Litigation either individually or on a class-wide basis related to the Applicable Records

For purpose of Settlement, "Unknown Claims" are defined as:

> any Released Claims which the Class Representatives or any Class Member does not know or suspect to exist in his, her, or its favor at the time of the entry of the Judgment and which, if known by him, her, or it might have affected his, her, or its settlement with and release of Defendants and the Defendants' Releasees. The Class Representatives and each Class Member may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but the Class Representatives and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, regulation, or rule, without regard to the subsequent discovery or existence of such different or additional facts. Each of the Class Representatives and each Class Member expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law that purports to limit the scope of a general release. Section 1542 provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER,

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY. The Class Representatives acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waivers were separately bargained for and key elements of the Settlement of which these releases are a part.

*See* Turner Dec., Ex. 1, ¶4.28 & 4.33.

The Defendants have retained KSA as Notice Expert and also contemplate retaining KSA as the Settlement Administrator, and will bear any costs associated with preparation and distribution of the Notice to the Class, reception and reporting of opt-outs and objectors, receipt of claim materials and distribution of the settlement funds.

**3. Settlement Payments.**

The election to receive a full/partial refund or coupon will be available to all Class Members who do not opt out of the Settlement and submit valid proof of purchase and payment. Class Members will one hundred and eighty (180) days from notice publication to submit a valid claim in order to receive compensation. Turner Dec., Ex. 1, ¶5.1. If the Settlement receives final approval, qualified Class Members will receive their payments from the Settlement Administrator within forty-five (45) days after: (1) expiration for the period to appeal or (2) any appeal affirming final approval of the Settlement becomes final. *Id.*, ¶5.5.

**4. Notice Program.**

In conjunction with preliminary approval, Plaintiffs respectfully request the Court approve the notice and claims program in which the Settlement Administrator will (1) send individual notice by First Class U.S. Mail to Class Members who directly purchased from Defendants, and (2) in order to reach in-direct purchasers, will publish notice in print and online audiophile publications and media sources, internet notice and social media advertising, including a Facebook ad campaign, internet notice displayed on a website hosted by Class

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
AND NOTICE PROGRAM - 8
Case No.  22-cv-01081-JLR

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Counsel, and on both Defendants Music Direct's and MoFi's websites.  Further, the Settlement Administrator will create a website for Class Members to electronically submit their proof of purchase and payment in order to claim compensation.

The Settlement is conditioned upon no more than ten percent (10%) of the Settlement Class opting out.

**5. Plaintiff's Service Award.**

Plaintiffs will ask the Court to approve a service award of $20,000 ($10,000 for each Class Representative) to be paid out directly by Defendants.  These awards will compensate Plaintiffs for their time and effort serving as the named Plaintiffs and for the risks they undertook in prosecuting the case.  The enforceability of the Settlement is not contingent on the Court's approval of the service award in the amount sought by the Plaintiffs.

**6. Attorney's Fees and Litigation Expenses.**

Plaintiffs' Counsel will ask for an award of attorney's fees of no more than $290,000, to be paid directly by Defendants.  The purpose of this award would be to compensate and reimburse Plaintiffs' Counsel for work already performed on the case, and the work necessary to oversee and shepherd the proposed Settlement to completion.  The enforceability of the settlement is not contingent on the Court's approval of an award of attorney's fees and costs in the amounts sought by Plaintiffs' counsel.

**7. Administrative Costs.**

Defendants shall bear any expenses and costs arising from administration of Settlement class claims.  Subject to the Court's approval, Defendants are in the process of selecting a Settlement Administrator.

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
AND NOTICE PROGRAM - 9
Case No.  22-cv-01081-JLR

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**E. Considerations In Reaching Settlement.**

The proposed Settlement is the result of substantial arm's-length negotiations between the opposing parties.  While the Plaintiffs are confident that Defendants' own marketing materials and admissions would allow them to demonstrate the presence of unfair and deceptive marketing of "all-analog" vinyl records, they also risk potential difficulties in demonstrating credible injury or harm.  For example, many of the effected albums sell on the secondary market, even opened, and used, for far more than their original MSRP.  Furthermore, Plaintiffs also believe that Class Members face potential difficulties in demonstrating that the DSD-master chain products they received were lower quality than the all-analog mastering chain Plaintiffs allege was promised by Defendants with MoFi's OMR and One-Step products.  Turner Dec. ¶ 4.

To ascertain potential damages and class size, Plaintiffs' Counsel reviewed retail and wholesale sales data produced by Defendants for approximately one-hundred and twenty-three (123) OMR and One-Step Applicable Records. Turner Dec., ¶2; Davis Declaration, ¶3.

Here, the Plaintiffs alleged four distinct causes of action: (1) violation of the Washington State Consumer Protection Act (RCW 19.86), (2) breach of contract, (3) unjust enrichment, and (4) violation of the Illinois Consumer Fraud Act (815 ILCS 505/2). Dkt. #14, pg. 9-13.  Plaintiffs originally raised the CPA on behalf of a sub-class of Washington residents, although the negotiated settlement does not make any distinction between Washington and non-Washington Class Members.  For purposes of this Settlement, all Class Members are treated the same.  In considering the proposed settlement, Plaintiffs' counsel assessed each claim and the likelihood of prevailing on that claim, as well as the various methods for establishing damages of limited-run or collectible merchandise.  After analyzing data produced by Defendants and considering

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

arguments raised by Defendants, Plaintiffs' Counsel believes the proposed settlement is fair and reasonable.

### III. AUTHORITY AND ARGUMENT

**A. The Settlement Approval Process.**

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 13.1 (5th ed. Updated 2015) (citing cases). Here, the proposed settlement is the best vehicle for the Settlement Class Members to receive the relief to which they may be entitled in a prompt and efficient manner.

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected settlement class members; and (3) a "fairness hearing" or "final approval hearing," at which settlement class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. *Manual for Complex Litigation (Fourth)* ("MCL 4th") §§ 21.632 – 21.634, at 432–34 (2014). This procedure safeguards settlement class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* Newberg § 13.1.

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

With this motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement "is within the range of possible approval" and thus whether notice to the settlement class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. Newberg § 13.13. *See City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)). The Court's grant of preliminary approval will allow the Settlement Class to receive direct notice of the proposed Settlement Agreement's terms and the date and time of the Final Approval Hearing, at which Settlement Class Members may be heard regarding the Settlement Agreement, and at which time further evidence and argument concerning the settlement's fairness, adequacy, and reasonableness may be presented. *See MCL 4th § 21.634.*

**B. The Criteria for Settlement Approval Are Satisfied.**

The Ninth Circuit puts "a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). To assess a settlement proposal, courts must balance the strength of the Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; and the reaction of the class members to the proposed settlement. *In re Online DVD-Rental Antitrust Litig.* ("*In re Online DVD*"), 779 F.3d 934, 944 (9th Cir. 2015); *McKinney-Drobnis v. Oreshack*, 16 F.4th

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
AND NOTICE PROGRAM - 12
Case No. 22-cv-01081-JLR

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

594, 607 (9th Cir. 2021) (listing factors from the 2018 amendments to FRCP 23 as "(A) the class

representatives and class counsel have adequately represented the class; (B) the proposal was

negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of

distributing relief to the class, including the method of processing class-member claims; (iii) the

terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class

members equitably relative to each other.")

## 1. The Settlement Agreement is the Product of Serious, Informed, and Non-Collusive Negotiations.

The Court's role is to ensure that "the agreement is not the product of fraud or

overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp*., 150 F.3d

1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted); *see also In re Online DVD*,

779 F.3d at 944 (noting settlements in class actions "present unique due process concerns for

absent class members," including the risk that class counsel "may collude with the defendants")

(quoting *In re Bluetooth Headset Prods. Liab. Litig.* ("*In re Bluetooth*"), 654 F.3d 935, 946 (9th

Cir. 2010)).

The Settlement Agreement is the result of extensive, arm's-length negotiations between

experienced attorneys for both parties who are competent practitioners in class action litigation

in general and with the legal and factual issues of this case. Turner Dec., ¶5.

## 2. The Settlement Agreement is Fair and Reasonable In Light of the Alleged Claims and Potential Defenses.

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
AND NOTICE PROGRAM - 13
Case No.  22-cv-01081-JLR

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

The Amended Complaint asserts claims for violations of Washington and Illinois consumer-protection statutes, as well as breach of contract and unjust enrichment. Dkt. #14, pg. 9-13.  The Amended Complaint also seeks prejudgment interest, exemplary damages, and attorney's fees and costs. *Id*.

Although this case was conditionally settled before the determination of key legal issues in dispute, the Defendants expressed their intention, if necessary, to contest the issue of class certification, and Plaintiffs' ability to demonstrate harm or injury resulting from the presence of DSD within the OMR and One-Step master chains.  The recoverability of prejudgment interest is highly uncertain because extensive analysis was required to identify the full scope of Settlement Class Members' damages.  Defendants would likely argue that such analysis precludes recoverability of prejudgment interest.  Finally, the recoverability of exemplary damages is also uncertain because the Defendants would likely argue that the product Class Members received was auditorily indistinguishable from that promised.

### 3.  The Settlement Provides Substantial Relief and Treats All Settlement Class Members Fairly.

As previously described, the Settlement provides that  Class Members will have the opportunity to return their Applicable Records for a full refund, or alternatively, to keep their records and claim a five percent (5%) refund or ten percent (10%) coupon towards future purchases from Defendants. Turner Dec., Ex. 1, ¶5.  Further, Class Members can elect which method of relief to receive for each individual Applicable Record they purchased and in their possession.  Therefore, the settlement structure not only fairly distributes compensation each Class Member paid for each record, but it also allows Class Members to make this election while considering the resale value of each record on the secondary market.

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
AND NOTICE PROGRAM - 14
Case No.  22-cv-01081-JLR

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

**4. Plaintiff's Requested Fees Are Reasonable.**

Plaintiffs' counsel will seek an award of up to $290,000 for reasonable fees and costs occurred in prosecuting this action. These fees will be borne and paid directly by Defendants and will not reduce the relief available to Class Members.

The Ninth Circuit has approved two methods for calculating attorneys' fees depending on the circumstances: the lodestar method and the percentage-of-recovery method. Under the lodestar method, the prevailing attorneys are awarded an amount calculated by multiplying the hours they reasonably expended on the litigation by their reasonable hourly rates. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). "Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund…" *In re Online DVD*, 779 F.3d at 949. Regardless of the method, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth*, 654 F.3d at 941.

The benchmark award is 25% of the common fund or gross recovery. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Plaintiff Counsel's request is approximately 2.7% of the potential estimated non-exemplary relief available to direct purchase Class Members. *See* Turner Dec., ¶3. When in-direct purchaser Class Members are included, the fee request is closer to 1.1% of total non-exemplary relief.

Plaintiffs' Counsel were confident in their ability to succeed at class certification and at trial. Nevertheless, success was by no means guaranteed, especially considering the complexity of the issues involved. Because Plaintiffs' counsel agreed to prosecute this case on a contingency basis with no guarantee of ever being paid, they faced substantial risk if they proceeded to trial.

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Prior to final approval, Plaintiffs' counsel will file a separate motion for an award of attorney's fees and costs, addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.

### 5. The Requested Service Award Is Reasonable.

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD*, 779 F.3d at 943 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)). Incentive or service awards are generally approved so long as the awards are reasonable and do not undermine the adequacy of the class representatives. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) (finding service award must not "corrupt the settlement by undermining the adequacy of the class representatives and class counsel"). For example, if a settlement explicitly conditions a service award on the class representative's support for the settlement, the service award is improper. *See id.* By contrast, where a settlement "provide[s] no guarantee that the class representatives would receive incentive payments, leaving that decision to later discretion of the district court," a service award may be appropriate." *In re Online DVD*, 779 F.3d at 943.

Here, the Plaintiffs individually request service awards of $10,000.00, or an amount the Court deems appropriate. This value reflects the proposed Class Members' high degree of participation in the investigation of their claims, as well as those of their fellow members. It also reflects their active participation in negotiation of this settlement, and their substantial contribution to settlement terms which ultimately benefited the Class. Turner Dec. ¶6. Plaintiffs' support of the settlement is independent of any service award and not conditioned on the Court awarding any particular amount or any award at all, in stark contrast to *Radcliffe*. Thus,

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
AND NOTICE PROGRAM - 16
Case No.  22-cv-01081-JLR

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

1    Plaintiffs' adequacy as class representatives is unaffected by an appropriate service award that

2    recognizes their efforts and contributions to the case.

3        **6.    The Proposed Notice Program Is Constitutionally Sound.**

4            Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class

5    members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1); *see also*

6    MCL 4th § 21.312.  The best practicable notice is that which is "reasonably calculated, under

7    all the circumstances, to apprise interested parties of the pendency of the action and afford them

8    an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339

9    U.S. 306, 314 (1950).  According to the Manual for Complex Litigation, a settlement notice

10   should do the following:

11
12       •    Define the class;

13       •    Describe clearly the options open to the class members and the
             deadlines for taking action;

14       •    Describe the essential terms of the proposed settlement;

15       •    Disclose any special benefits provided to the class representative;

16       •    Indicate the time and place of the hearing to consider approval of the
             settlement, and the method for objecting to or opting out of the settlement;

17       •    Explain the procedures for allocating and distributing settlement funds, and,
             if the settlement provides different kinds of relief for different categories of
18           class members, clearly set out those variations;

19       •    Provide information that will enable class members to calculate or at least
             estimate their individual recoveries; and
20
         •    Prominently display the address and phone number of class counsel and the
21           procedures for making inquiries.

22   The proposed form of notice, attached as Exhibit Two to the Turner Decl. ("Notice"),

23   satisfies all of the above criteria.  The Notice is clear, straightforward, and provides persons

24   in the Settlement Class with enough information to evaluate whether to participate in the

25   settlement.  Thus, the Notice satisfies the requirements of Rule 23.  *Phillips Petroleum Co. v.*

26

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

*Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

The Settlement Administrator will send notice by First Class U.S. Mail and e-mail to all direct purchasers of Applicable Records from Defendants.  For indirect purchasers who bought Applicable Records from other retailers, the Settlement Administrator will publish a media campaign to notify Settlement Class Members of their rights and applicable deadlines and invite them to submit timely claims.  This Notice Program satisfies due process especially because Rule 23 does not require that each potential class member receive actual notice of the class action.  Mullane, 339 U.S. at 316 (explaining that the Supreme Court "has not hesitated to approve of resort to publication as a customary substitute in [a] class of cases where it is not reasonably possible or practicable to give more adequate warning").

All in all, the Notice Program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23.

**C. Provision Certification of the Class Is Appropriate.**

For settlement purposes only the Parties have agreed to certify the Settlement Class and respectfully request that the Court provisionally certify the Settlement Class defined as:

> All persons in the United States who, from March 19, 2007, to July 27, 2022, purchased, either directly from a Defendant or directly from retail merchants, new and unused vinyl recordings that were sourced from original analog master tapes and which utilized a direct stream digital transfer step in the mastering chain, and which were marketed by Defendants using the series labeling descriptors "Original Master Recording" and/or "Ultradisc One-Step," provided that said purchasers still own said recordings.  Excluded from the Class are persons who obtained subject recordings from other sources.

As detailed below, the Settlement Class satisfies the applicable certification requirements.

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

**1.   The Rule 23(a) Factors Are Met for Settlement Purposes.**

   **a.      Numerosity.**

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)).  "It is a long-standing rule that 'impractical' does not mean 'impossible' rather, impracticality means only 'the difficulty or inconvenience of joining all members of the class.'" *McClusky v. Trustees of Red Dot*, 268 F.R.D. 670, 673 (W.D. Wash. 2010).  The Settlement Class herein includes approximately over 20,000 direct purchasers, rendering joinder impracticable.  *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 674 (W.D. Wash. 2010).

   **b. Commonality.**

The commonality requirement of Rule 23(a)(2) is satisfied because the questions of law common to the Settlement Class are, in fact, identical, and the questions of fact address merely each individual customer's claim, and the answers to these questions can all be derived from a common database and associated sales data.  Because persons in the Settlement Class here all allegedly suffered the same injury and are generally subject to the same defenses, commonality is satisfied for settlement purposes.

   **c. Typicality.**

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "[R]epresentative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Here, the representatives were direct customers of Defendants during the

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

1    relevant period, and purchased both OMR and Ultradisc One-Step products.  They are not

2    asserting claims different than those of the remaining Settlement Class Members.  Because

3    Plaintiffs' claims arise from the same course of conduct that affected all Settlement Class

4    Members, typicality is satisfied for settlement purposes.

5

6        **d. Adequacy of Representation.**

7        Adequacy requires the representative of a class to provide fair and adequate

8    representation of the class. Fed. R. Civ. P. 23(a)(4).  "To determine whether named plaintiffs

9    will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs

10   and their counsel have any conflicts of interest with other class members and (2) will the named

11   plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v.*

12   *Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

13   In the context of a class settlement, examination of potential conflicts of interest "is especially

14   critical." *In re Online DVD*, 779 F.3d at 942 (internal marks and quotation omitted).  That said,

15   courts will not deny class certification on the basis of "speculative" or "trivial" conflicts.  *See id.*

16   (finding settlement class representatives adequate and overruling objection that proposed $5,000

17   service award created a conflict of interest).

18       Plaintiffs have no interests that are antagonistic to or in conflict with persons in the

19   Settlement Class they seek to represent.  They suffered the same alleged deception and unfair

20   business practices that all persons in the Settlement Class allegedly suffered.  Class Counsel are

21   active practitioners in consumer and class action litigation, including cases very similar to this

22   one. *See* Turner Dec., ¶12.  The requirements of Rule 23(a) are satisfied for settlement purposes.

23       **2.    The Rule 23(b)(3) Factors Are Satisfied for Settlement Purposes.**

24       Rule 23(b)(3)'s predominance requirement tests whether proposed classes are

25   "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022

26   (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  The predominance inquiry

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

measures the relative weight of the common questions. *Amchem*, 521 U.S. at 624. Common

issues predominate here for settlement purposes because the central liability question in this case,

whether Defendants are liable for their alleged misrepresentation that OMR Ultradisc One-Step

products were produced using an "all-analog" master chain, applies to all Settlement Class

Members.

Because the claims are being certified for purposes of settlement, there are no issues

with manageability. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only

certification, a district court need not inquire whether the case, if tried, would present

intractable management problems ... for the proposal is that there be no trial."). Additionally,

resolution of thousands of claims in one action is far superior to individual lawsuits and

promotes consistency and efficiency of adjudication. *See id.* at 617 (noting the "policy at the

very core of the class action mechanism is to overcome the problem that small recoveries do

not provide the incentive for any individual to bring a solo action prosecuting his or her

rights"). Certification for purposes of settlement is appropriate.

### E.    Scheduling a Final Approval Hearing Is Appropriate.

The last step in the settlement approval process is a final approval hearing at which the

Court may hear all evidence and argument necessary to make its settlement evaluation.

Proponents of the settlement may explain the terms and conditions of the Settlement Agreement

and offer argument in support of final approval. The Court will determine after the final

approval hearing whether the settlement should be approved, and whether to enter a final order

and judgment under Rule 23(e). Plaintiffs request that the Court set a date for a hearing on final

approval at the Court's convenience, approximately 145-170 days after entry of an order

preliminarily approving the settlement. If the Court preliminarily approves the settlement in

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
AND NOTICE PROGRAM - 21
Case No. 22-cv-01081-JLR

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

January 2023, the final approval hearing should be scheduled for approximately June 20, 2023. The Parties also request that the Court schedule further settlement proceedings pursuant to the schedule set forth below:

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Mailing Date | Within 45 days following entry of the Preliminary Approval Order |
| Exclusion/Objection Deadline | 60 days after Notice Mailing Date |
| Claims Administrator's Filing of Exclusion Requests | 7 days after Exclusion/Objection Deadline |
| Plaintiffs' Counsel's Fee Motion Submitted | 30 days after Exclusion/Objection Deadline |
| Final Approval Brief and Response to Objections | 30 days after Exclusion/Objection Deadline |
| Final Approval Hearing / Noting Date | Between 145-170 days of entry of the Preliminary Approval Order |
| Final Approval Order Entered | At the Court's Discretion |

## IV. CONCLUSION.

For the foregoing reasons, the Parties respectfully request that the Court: (1) grant preliminary approval of the settlement; (2) provisionally certify the proposed settlement class; (3) appoint Duncan Turner of Badgley Mullins Turner PLLC as Class Counsel; (4) appoint Stephen Tuttle and Dustin Collman as class representatives; (5) approve the proposed notice plan; (6) appoint Kroll Settlement Administration, LLC to serve as Notice Expert; and (7) schedule the final fairness hearing and related dates.

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

1

2

3

4

5

Submitted this 15th day of January, 2023.

6

7

                                       **BADGLEY MULLINS TURNER PLLC**

8

                                       */s/ Duncan C. Turner*
                                       Duncan C. Turner, WSBA No. 20597

9

                                       19929 Ballinger Way NE, Suite 200

10

                                       Seattle, WA 98155
                                       Telephone:  (206) 621-6566

11

                                       Email:dturner@badgleymullins.com,
                                       *Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
AND NOTICE PROGRAM - 23
Case No.  22-cv-01081-JLR

**BADGLEY MULLINS TURNER**
PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686