1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| STEPHEN J. TUTTLE, et al., | CASE NO. C22-1081JLR |
|---|---|
| Plaintiffs, | ORDER |
| v. | |
| AUDIOPHILE MUSIC DIRECT, INC., et al., | |
| Defendants. | |

## I. INTRODUCTION

Before the court is the motion by third parties Adam Stiles, Omar Flores, and Gregory Bitterman (collectively, "Proposed Intervenors") to intervene as party plaintiffs and/or for a stay of the proposed class action settlement in this matter. (Mot. (Dkt. # 23); Reply (Dkt. # 35).) Plaintiffs Stephen J. Tuttle and Dustin Collman (collectively, "Plaintiffs") and Defendants Audiophile Music Direct, Inc. and Mobile Fidelity Sound Lab, Inc. (collectively, "Defendants") oppose the motion. (Pls. Resp. (Dkt. # 31); Defs.

ORDER - 1

Resp. (Dkt. # 34-1).) The court has considered the submissions of the parties, the relevant portions of the record, and the governing law. Being fully advised,[1] the court GRANTS Proposed Intervenors' motion to intervene and DENIES their motion to stay. Proposed Intervenors are granted permissive intervention for the limited purpose of opposing Plaintiffs' revised motion for preliminary approval of the parties' class action settlement.

## II. BACKGROUND

Defendants are producers and sellers of vinyl music recordings. (Am. Compl. (Dkt. # 14) ¶ 1.) One of their product lines "consists of analog recordings that are made without the use of digital processing, i.e., by duplicating the original analog master recordings using only analog processes." (*Id.*) These recordings are referred to as "triple analog" recordings, and, according to Plaintiffs, they are "highly valued by high-end audiophiles and collectors." (*Id.*; *see also id.* ¶ 21 (explaining that audiophiles believe that analog recordings "preserve the entire dynamic range of the sound that has been recorded, whereas digital recording limits or compresses the signal in a way that limits the dynamic range").) As a result, Defendants were able to charge a "high premium" for recordings that they claimed were "triple analog." (*Id.* ¶¶ 22-24.)

Plaintiffs allege, however, that Defendants represented that many of their recordings were "triple analog" when, in fact, they were not. (*Id.* ¶ 2; *see also id.* ¶ 27

---

[1] Neither party has requested oral argument (*see* Mot. at 1; Pls. Resp. at 1; Defs. Resp. at 1) and the court finds that oral argument would not be helpful to its resolution of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

(quoting a July 27, 2022 statement in which Defendants' president, Jim Davis, acknowledged that Defendants had used digital technology in their mastering chain).) They assert, on behalf of themselves and proposed Washington and nationwide classes, that they reasonably relied on Defendants' representations that the recordings were "triple analog," purchased the recordings either directly from Defendants or from third-party retailers based on those representations, and suffered damage as a result. (*Id.* ¶¶ 2, 30.)

Plaintiffs filed their initial complaint in this court on August 2, 2022, and amended their complaint on December 20, 2022. (Compl. (Dkt. # 1); Am. Compl.) They allege a claim for violation of the Washington Consumer Protection Act ("WCPA"), ch. 19.86 RCW, on behalf of the Washington class and claims for breach of contract, unjust enrichment, and violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2, on behalf of the nationwide class. (Am. Compl. ¶¶ 35-36, 46-69.) Between August 18 and September 23, 2022, other sets of plaintiffs filed separate proposed class actions against Defendants in the Northern District of Illinois, the Central District of California, and the Northern District of California. *See Stiles v. Mobile Fidelity Sound Lab, Inc.*, Case No. 1:22-cv-04405 (N.D. Ill.) (filed August 18, 2022); *Bitterman v. Mobile Fidelity Sound Lab, Inc.*, Case No. 1:22-cv-04714 (N.D. Ill.) (filed September 1, 2022); *Allen v. Audiophile Music Direct*, Case No. 2:22-cv-08146 (C.D. Cal.) (filed September 22, 2022, in Los Angeles County Superior Court before being removed to federal court); *Molinari v. Audiophile Music Direct*, Case No. 4:22-cv-05444 (N.D. Cal.) (filed September 23, 2022).

On August 18, 2022, Defendants' counsel, Joseph Madonia, had an initial conversation with Plaintiffs' counsel, Duncan C. Turner. (Madonia Decl. (Dkt. # 33-1) ¶ 5; 2/13/23 Turner Decl. (Dkt. # 32) ¶ 4.) That same day, Bursor & Fisher, P.A., and Wolf Haldenstein Adler Freeman & Herz, LLC (together, "*Stiles* Counsel") filed the class action complaint in *Stiles* in the Northern District of Illinois. (*See* Joint Decl. (Dkt. # 24) ¶ 5, Ex. A ("*Stiles* Complaint").[2])

On August 22, 2022, Mr. Madonia again contacted Mr. Turner to discuss the possibility of settlement. (Madonia Decl. ¶ 6; 2/13/23 Turner Decl. ¶ 5.) Mr. Turner informed Mr. Madonia that he needed "reliable information" about the recordings at issue, along with sales and revenue data, before the parties could begin settlement discussions. (2/13/23 Turner Decl. ¶ 5.)

On September 1, 2022, DiCello Levitt, LLC, along with co-counsel from Golumb Spirt Grunfeld, P.C., and Starr Austen & Miller, LLP (together, "*Bitterman* Counsel") filed the class action complaint in *Bitterman* in the Northern District of Illinois. (Joint Decl. ¶ 7, Ex. B ("*Bitterman* Complaint").) Shortly thereafter, *Stiles* Counsel and *Bitterman* Counsel (collectively, "*Stiles/Bitterman* Counsel") began working together to litigate the two proposed Illinois class actions and to communicate with Mr. Madonia. (*Id.* ¶ 8.)

//

//

---

[2] The Joint Declaration was filed by Amy E. Keller of the law firm DiCello Levitt LLC, Kenneth J. Grunfeld of the law firm Golumb Spirt Grunfeld, P.C., and Philip L Fraietta of the law firm Bursor & Fisher, P.A. (*Id.* ¶¶ 1-3.)

1  On September 16, 2022, Mr. Turner and Mr. Madonia agreed to participate in informal discovery. (*Id.* ¶ 6; Madonia Decl. ¶ 7.) In mid-November, Defendants produced to Plaintiffs a spreadsheet that identified the recordings, the sales volume of the recordings, and the wholesale and retail prices for each recording. (2/13/23 Turner Decl. ¶ 6; Madonia Decl. ¶ 8.) Defendants produced the same information to *Stiles*/*Bitterman* Counsel on December 2, 2022. (Madonia Decl. ¶ 8.)

Starting on November 5, 2022, Mr. Turner and Mr. Madonia "began to outline the structure of a settlement," and by November 22, 2022, the parties reached an agreement on a "three-option" structure that would provide class members the ability to seek a full refund if they wished to return the records at issue, or, if they chose to keep their records, the ability to receive either a partial refund or a coupon. (2/13/23 Turner Decl. ¶¶ 7-9; Madonia Decl. ¶ 9.) The parties discussed attorney's fees and incentive awards after the monetary issues had been agreed upon. (2/13/23 Turner Decl. ¶ 10; Madonia Decl. ¶ 10.)

In late November 2022, the parties' discussions regarding the form of notice and logistics of the return process were delayed when counsel for both Plaintiffs and Defendants contracted COVID-19. (2/13/23 Turner Decl. ¶ 11; *see also* 12/6/22 Stip. (Dkt. # 12) (requesting an extension of the deadlines to submit the joint status report and discovery plan and for Defendants to answer the complaint because Mr. Madonia was recovering from COVID-19).) By late December 2022, counsel resumed their work on the logistical aspects of the settlement. (2/13/23 Turner Decl. ¶ 11.)

Mr. Madonia states that while he was negotiating with Mr. Turner, he also had "preliminary conversations" with counsel for the plaintiffs in the other proposed class

actions, but that there were no substantive settlement negotiations or exchanges of settlement terms with any of the attorneys for the plaintiffs in the other actions. (Madonia Decl. ¶ 11.) *Stiles/Bitterman* Counsel, however, assert that they discussed the prospect of a class-wide resolution during "frequent communicat[ions]" with Mr. Madonia. (Joint Decl. ¶ 9.) *Stiles/Bitterman* Counsel assert that the "major impediment" to their settlement discussions was whether to use a professional mediator to help settle the case. (*Id.*) Mr. Madonia acknowledges that Defendants "repeatedly rejected" *Stiles/Bitterman* Counsel's insistence that they negotiate using a third-party mediator. (Madonia Decl. ¶ 12.) He states that Defendants did not believe that the expense and delay of mediation were necessary in light of Defendants' willingness to offer a full refund to any customer who wanted to return their records. (*Id.*)

According to *Stiles/Bitterman* Counsel, their settlement discussions with Mr. Madonia "reached a critical point" during a January 3, 2023 conference call. (Joint Decl. ¶ 11.) *Stiles/Bitterman* Counsel assert that during that call, Mr. Madonia "specifically articulated his client's defense strategy to resolve the case using a reverse auction."[3] (*Id.*) They state that Mr. Madonia asked *Stiles/Bitterman* Counsel to submit a settlement offer to his clients for their consideration and "suggested that Defendants would solicit

---

[3] "A reverse auction is said to occur when 'the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant.'" *Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091, 1099-1100 (9th Cir. 2008) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002)). The mere fact that a defendant is discussing settlement with the plaintiffs in parallel proceedings, however, is insufficient to establish that an impermissible "reverse auction" has occurred. *Id.*

demands from each group [of plaintiffs] and accept the lowest settlement offer of all the cases." (*Id.* ¶ 12.) At the end of the call, according to *Stiles/Bitterman* Counsel, Mr. Madonia "stated he needed fifteen more days to discuss mediation with his client before providing Defendants' position on the matter." (*Id.* ¶ 15.) *Stiles/Bitterman* Counsel agreed to send Defendants a formal settlement demand letter. (*Id.*)

Mr. Madonia remembers the January 3, 2023 call differently. He states that *Stiles/Bitterman* Counsel demanded that the parties hire a mediator and commence mediation of the Illinois cases. (Madonia Decl. ¶ 13.) Mr. Madonia again stated that Defendants did not want to mediate. (*Id.*) According to Mr. Madonia, *Stiles/Bitterman* Counsel then offered to send a settlement demand letter which would set forth some of the benefits of mediation. (*Id.*) Mr. Madonia denies, however, that he ever discussed "(i) Defendants' defense strategy, (ii) any attempt or intention of Defendants to conduct a 'reverse auction' or 'solicit demands from each group and accept the lowest settlement offer of all the cases,' or (iii) inquire and/or request a quote or 'bid' from the *Stiles/Bitterman* [C]ounsel (or any other plaintiffs [*sic*] counsel in any of the cases) as to their legal fees and/or settlement terms in connection with a potential settlement of the cases." (*Id.* ¶ 14.)

On January 6, 2023, *Stiles/Bitterman* Counsel sent Defendants a formal written settlement demand, which contained "their first suggestion of any settlement terms." (Madonia Decl. ¶ 15; *see also* Joint Decl. ¶ 17 (stating that in their letter, *Stiles/Bitterman* Counsel asked Defendants to decide on mediation by January 18, 2023).) Mr. Madonia says he did not respond to or counter the demand because Defendants had already

ORDER - 7

reached a settlement in principle with Plaintiffs in this case. (*Id.*) According to Mr. Madonia, *Stiles/Bitterman* Counsel's demand included an "'initial' proposal of a settlement cap of $10,000,000 (from which the *Stiles/Bitterman* legal fees would be calculated and taken from, thus reducing the amount payable to the class members)." (*Id.*)

On January 17, 2023, Plaintiffs filed an unopposed motion for preliminary approval of the parties' class action settlement and notice program. (1st Prelim. App. Mot. (Dkt. # 17); *see* 1/15/23 Turner Decl. (Dkt. # 18) ¶ 14, Ex. 1 ("1st Agreement").) The proposed settlement would

> allow all original purchasers to either: return their Applicable Records[4] to Defendants in exchange for a full refund, plus any shipping and taxes, or, alternatively, keep their Applicable Records and receive either a refund equal to five percent (5%) of the Applicable Records' purchase price, or a coupon for ten percent (10%) of the Applicable Records' purchase price towards other of [Defendants'] products.

(1st Prelim. App. Mot. at 2.) The parties represented that they agreed to provide options for class members to keep the Applicable Records because some of the Applicable Records have a higher value on the secondary market than their purchase price. (*Id.* at 2-3.) The parties proposed a notice program in which they would issue notice by U.S. Mail to all class members who purchased their records directly from Defendants and advertise the settlement in industry and hobbyist print and online publications, a Facebook ad campaign, and Defendants' own websites in an effort to reach class

---

[4] The "Applicable Records" are Defendants' Original Master Recording and Ultradisc One-Step series of vinyl records that included a digital transfer step in the mastering chain. (1st Prelim. App. Mot. at 1-2.)

ORDER - 8

members who purchased their records from other retailers. (*Id.* at 3.) The parties estimated that Defendants had sold over 630,000 Applicable Records during the class period, either directly to consumers or wholesale to third-party retailers, and that the proposed class would be comprised of at least 20,000 direct purchasers and 20,000 indirect purchasers. (*Id.* at 3-4.) Plaintiffs estimated that the total gross value of relief for the class was over $25 million. (*Id.* at 6; *see also* 2/13/23 Turner Decl. ¶ 13 (estimating Defendants' exposure as $33 million if all class members sought a full refund for all Applicable Records; $1.67 million if all class members sought the 5% refund; and $3.34 million if all class members sought the 10% coupon).) Plaintiffs requested service awards of $10,000 each for the two proposed class representatives and attorney's fees of "no more than $290,000," both to be paid directly by Defendants separately from any class relief. (1st Prelim. App. Mot. at 9; *see also* 2/13/23 Madonia Decl. ¶ 15.) Finally, Defendants agreed to pay the costs of notice and settlement administration. (1st Prelim. App. Mot. at 8.) In exchange, class members would release claims against Defendants "which arise out of or are in any way related to Defendants' marketing, promotion and sale of the Applicable Records" between March 19, 2007, and July 27, 2022. (1st Agreement ¶¶ 4.1, 4.27.)

On January 20, 2023, the court denied Plaintiffs' motion for preliminary approval without prejudice and granted the parties' agreed motion to stay this case pending the court's consideration of the motion for preliminary approval. (1/20/23 Order (Dkt. # 21).) The court directed Plaintiffs to correct six issues that the court identified in the preliminary approval materials and granted Plaintiffs leave to submit revised materials

with a renewed motion for preliminary approval. (*Id.* at 3-4.) The court directed the parties to file either their renewed motion for preliminary approval or a joint statement regarding the status of their revisions by no later than January 31, 2023. (*Id.*)

Proposed Intervenors filed the instant motion to intervene on January 27, 2023. (Mot.) They argue that they should be permitted to intervene to oppose preliminary approval of the settlement in this case as the product of a "collusive reverse auction." (*Id.* at 12.) They also ask the court to stay preliminary approval of the settlement in this case pending the outcome of a motion they filed in the Northern District of Illinois seeking consolidation of the *Stiles* and *Bitterman* actions and appointment of interim class counsel for those actions. (*Id.* at 11-12.)

Plaintiffs filed their renewed unopposed motion for preliminary approval of their class action settlement on February 2, 2023. (2d Prelim. App. Mot. (Dkt. # 26).) The parties' revisions address the following topics:

> 1. Additional information regarding the procedure and timeline for Class Members to submit claim forms, and elect which form of relief they wish to receive, i.e., coupon, partial refund, or return for full refund;
>
> 2. Additional information regarding the procedure and timeline for Class Members to return their records for a full refund following final approval, and the mechanism for curing any deficiencies with returned records;
>
> 3. Changes to the proposed notice program to increase saturation among both direct and indirect purchasers of records; and
>
> 4. Correction of various scrivener's errors, including captioned case numbers in supporting materials and exhibits.

(*Id.* at 1-2.)

### III. ANALYSIS

Proposed Intervenors argue that they are entitled to both intervention as of right under Federal Rule of Civil Procedure 24(a) and permissive intervention under Federal Rule of Civil Procedure 24(b). (Mot. at 5-11.)

A court must permit a nonparty to intervene as of right in a pending lawsuit if the party establishes that:

> (1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

*Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (citation and quotation marks omitted); Fed. R. Civ. P. 24(a)(2). "Rule 24(a) is construed broadly, in favor of the applicants for intervention." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 894 F.3d 1030, 1037 (9th Cir. 2018). However, "[f]ailure to satisfy any one of the requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Here, Proposed Intervenors cannot meet the second of the four requirements. Courts in this circuit "have consistently held that 'the ability to file objections and opt out of a class settlement, as dictated by Rule 23, are sufficient to protect the interests of class members in a typical case seeking damages.'" *Brown v. Accellion, Inc.*, No. 5:21-CV-01155-EJD, 2023 WL 1928210, at *3 (N.D. Cal. Feb. 10, 2023) (quoting *Gonzalez v. CoreCivic of Tennessee, LLC*, No. 16-cv-01891-DAD-JLT, 2018 WL

3689564, at *3 (E.D. Cal. Aug. 1, 2018), and collecting cases); *see also McClintic v. Lithia Motors, Inc.*, No. C11-0859RAJ, 2011 WL 13127844, at *7 (W.D. Wash. Oct. 19, 2011) (denying intervention as of right where proposed intervenor could protect his interests by opting out of the proposed class settlement). Because Proposed Intervenors can protect their interests by objecting to or opting out of the class settlement in this case, the court concludes that they do not have a significant protectible interest that may be impaired or impeded by the disposition of this action. Proposed intervenors' request for intervention as of right, therefore, is DENIED.

If a party cannot meet the standard to intervene as of right, the court may allow permissive intervention to anyone who files a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Even if an applicant satisfies the threshold requirements, the district court has discretion to deny permissive intervention. *Donnelly*, 159 F.3d at 412. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Although the movant bears the burden of showing that he meets these requirements, courts broadly interpret the requirements in favor of intervention. *Smith v. Los Angeles Unif. Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016).

The court concludes that Proposed Intervenors have met the requirements for permissive intervention. First, the motion is timely, having been filed less than two weeks after Plaintiffs filed their first motion for preliminary approval. (*See* Dkt.) Second, there can be no doubt that Proposed Intervenors' claims in their Northern District

of Illinois cases substantially overlap with Plaintiffs' claims in this case.  (*Compare Stiles* Complaint; and *Bitterman* Complaint; *with* Am. Compl.)  Third, the court finds that allowing intervention for the limited purpose of opposing Plaintiffs' motion for preliminary injunction will not unduly delay or prejudice adjudication of the original parties' rights.  To the contrary, the court finds it appropriate to resolve the factual question of whether the proposed settlement in this case is, as Proposed Intervenors contend, a "collusive reverse auction" before the parties engage in the extensive notice program described in their revised preliminary approval materials.  (*See* Finegan Decl. (Dkt. # 27) ¶¶ 12-19 (declaration of the parties' designated settlement administrator, describing the proposed notice program in detail).)

Accordingly, the court exercises its discretion to GRANT Proposed Intervenors' request for permissive intervention.  Proposed Intervenors may intervene in this action for the limited purpose of opposing Plaintiffs' revised motion for preliminary approval of the class action settlement.  (2d Prelim. App. Mot.)  In the interest of managing its docket, however, the court DENIES Proposed Intervenors' request to stay this case pending the outcome of their motion for consolidation and appointment of interim class counsel in the later-filed Northern District of Illinois cases.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Proposed Intervenors' motion for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1) (Dkt. # 23).  Proposed Intervenors may file a response to Plaintiffs' motion for preliminary approval of the class action settlement in this matter by no later than **March 22, 2023**.  Proposed

Intervenors' response shall not exceed 8,400 words in length.  Plaintiffs and Defendants may file optional replies (or a joint reply) in support of Plaintiffs' motion for preliminary approval by no later than **March 31, 2023**.  These optional replies shall not exceed 4,200 words in length.  Each response or reply shall include a proposal for the process the court should use to resolve the question of whether the class settlement in this action was the result of a "collusive reverse auction."  The Clerk is DIRECTED to renote Plaintiffs' motion for preliminary approval of the class action settlement in this matter (Dkt. # 26) for **March 31, 2023**.

Dated this 13th day of March, 2023.

JAMES L. ROBART
United States District Judge